UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-61683-CIV-SMITH

GUIDEONE NATIONAL
INSURANCE COMPANY,

      Petitioner,

vs.

PALM NMB, LLC, et al.,

      Respondents.
_____/

## ORDER GRANTING RESPONDENTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Petitioner's, GuideOne National Insurance Company, Motion for Summary Judgment [DE 84], Respondents' Response [DE 93], Petitioner's Reply [DE 95], Palm NMB, LLC and Privilege Apartments, LLC's Motion for Summary Judgment [DE 86], Petitioner's Response [DE 87], and Palm NMB, LLC and Privilege Apartments, LLC's Reply [DE 97]. This action arises from a fire in an apartment unit owned by Privilege Apartments, LLC (Privilege). As a result of that fire, a six-year old died. Subsequently, a lawsuit was brought against Privilege in state court for negligence. GuideOne National Insurance Company (GuideOne) issued a General Commercial Liability policy for the property. GuideOne's Amended Complaint seeks a declaratory judgment declaring that, under the terms of its policy, GuideOne is entitled to deny coverage to Palm NMB, LLC (Palm) and Privilege. GuideOne and Palm and Privilege have filed cross-motions for summary judgment. For the reasons set forth below, GuideOne's motion is denied and Palm and Privilege's motion is granted.

# I. UNDISPUTED MATERIAL FACTS[1]

Palm is the owner of an apartment complex located at 12501 NE 13th Avenue, North Miami, Florida 33161 (the Palm Apartments). (Georgescu Aff. [DE 85-2] ¶ 5.) Palm completed a Commercial Insurance Application for purposes of obtaining commercial general liability insurance for the Palm Apartments. (DE 1-2.) Palm executed a Supplemental Application on April 5, 2017. (DE 1-3.) The Supplemental Application asked if there were smoke detectors on the insured premises and the "yes" box was marked. (*Id.*) The Supplemental Application also asked whether the smoke detectors were hard wired or battery operated. (*Id.*) The word "battery" was typed in after the question. (*Id.*) At the end of the Supplemental Application is a section titled "Representation & Warranty Statement," which states:

> I have read this Application and I represent that all of the foregoing statements are true and accurate and that these statements are offered as the basis upon which [insurance company] is considering issuance of an insurance policy. Any missing or erroneous information in this Application may jeopardize coverage in the event of a claim under any policy issued by [the insurance company].

(*Id.*)

GuideOne issued Palm, as the named insured, a Commercial General Liability Insurance Policy that covered the period from March 16, 2017 to March 16, 2018 (the Policy). (DE 85-3.) The Representations and Warranties Endorsement of the Policy stated:

> A. The Named Insured understands and agrees that the following representations and warranties are material and that the Company is relying on the truthfulness of these representation and warranties, which are made the basis of and a condition for the Company's acceptance of the risks covered by the insurance. The Named Insured further understands and agrees that if any of the following material representations and warranties are false, or if the Named Insured fails to compkly with any of the following representations and warranties at any time during the "Policy Period", [sic] the Named Insured shall be deemed to have breached this insurance policy. A breach of any of the following representations and warranties

---

[1] Citations to facts that have been admitted by both sides have been omitted.

will result in this policy not applying to any "Claim" or "Suit" brought hereunder.

B. The Named Insured hereby represents and warrants that the following are true and correct as of the inception date of the policy:

> 1. The information contained in the Application(s) is a just, full and true exposition of all the facts and circumstances with regard to the risk to be insured.
>
> * * *
>
> C. The Named Insured further presents and warrants that the following are true and correct as to the inception date of the policy and will remain so at all times during the "Policy Period":
>
> The following apply to ALL location(s):
>
> * * *
>
> 2. There are operable smoke detectors in each unit, office, utility/laundry room and storage area.

(DE 85-3 at 6-7 (bold omitted).) Additionally, Section V, Notice and Conditions of the Policy, Subsection S, Statements, Warranties and Representations provides:

> By accepting this Policy you agree that:
>
> * * *
>
> 2. The statements warranties and representations are material, accurate and complete;
>
> 3. We have issued this Policy in reliance upon your statements, warranties and representations; and
>
> 4. Except as otherwise provided by law, this Policy is void in any case of fraud or if the insured (or any agent or person acting on behalf of or for the benefit of any insured) conceals or misrepresents any material fact or circumstances relating to this insurance.

(*Id.* at 19-20.)

Privilege is the owner of an apartment complex located at 1040 NE 7th Avenue, Fort Lauderdale, Florida 33304 (the Privilege Apartments). (Georgescu Aff. ¶ 6.) Privilege purchased the Privilege Apartments on April 25, 2017. (*Id.*) On or about April 25, 2017, Privilege filled

3

out a Supplemental Application – Apartments & Condominiums.² (DE 85-4.) The Application is not signed but it does indicate that there are battery operated smoke detectors on the premises. (*Id.*) Privilege's Supplemental Application contained the same Representation & Warranty Statement as the one executed by Palm. (*Id.*) On April 25, 2017, Privilege became a Named Insured on the Policy. (Georgescu Aff, ¶ 13, Policy [DE 85-3] at 37.) Palm and Privilege are independent, unaffiliated entities. (Georgescu Aff. ¶ 4.)

On December 28, 2017, Glenda Alvarenga applied to lease an apartment at Privilege Apartments. In January 2018, before Ms. Alvarenga moved in, a new smoke detector with a new battery was installed in Apartment 26. (Valles Aff. [DE 85-9] ¶6.) Before Ms. Alvarenga moved in, the unit was inspected by a Broward County Housing Authority Inspector who found that Apartment 26 had the correct number of smoke detectors and that the smoke detectors were properly working. (Umana Dep. [DE 85-8] 29:8-11.) Ms. Alvarenga executed a lease agreement, including a Smoke Detector Addendum, which affirmed that Ms. Alvarenga had inspected the smoke detectors(s) in Apartment 26 and they were in proper working condition. (Ex. 1 to Georgescu Aff.) The Smoke Detector Addendum also stated that it was Ms. Alvarenga's responsibility to regularly test the smoke detector and report any problems to management. (*Id.*) On February 2, 2018, Ms. Alvarenga and her family moved into Apartment 26.

Shortly after Ms. Alvarenga moved into the apartment, she contacted the handyman for Privilege Apartments to complain that her smoke detector was constantly sounding and to ask how to turn it off. (Valles Aff. ¶¶ 9-10.) The handyman explained how to restart the smoke detector by pressing a button. (Valles Aff. ¶11.) Ms. Alvarenga indicated that this had already

---

² The record does not contain any other application from Privilege.

4

been tried but had not worked. (*Id.*) The handyman then informed her that if the restart button had not worked, the only way of stopping the sound was by disconnecting the battery. (*Id.* at ¶ 12.) He then advised Ms. Alvarenga that if she disconnected the battery, the smoke detector would not work and would not perform its fire protection function. (*Id.* at ¶ 13.) The handyman attempted to follow up with Ms. Alvarenga twice after the phone call but was unsuccessful. (*Id.* at ¶ 15.) According to Ms. Alvarenga, the handyman actually texted her and told her to take the smoke detector down from the wall to stop the beeping. (Alvarenga Dep. [DE 99-1] at 35:8-36:13.) Ms. Alvarenga testified that she did remove the smoke detector from the wall and put it in the hall closet, but she did not remove the battery from the smoke detector when she put it in the closet. (*Id.* at 39:8-22.)

On February 18, 2018, a fire broke out in Apartment 26 of the Privilege Apartments. A minor child, 6-year old K.A., died as a result. According to a police report, the fire started in the children's bedroom where Ms. Alvarenga had placed a lit candle. (Police Report [DE 85-11] at 10.) According to the report, one of the children had been playing with the candle before the fire started. (*Id.*) The police report also noted that, after the fire, an inspection found an "empty smoke detector mount . . . Several feet away the disconnected smoke detector was noted in the open hall closet." (*Id.* at 19.) Before the fire, Ms. Alvarenga had disconnected the smoke detector. (*Id.* at 22.) The Fort Lauderdale Fire Rescue report about the fire indicates that the smoke detector failed to activate at the time of the fire. (Fort Lauderdale Fire Rescue Report [84-1] at 2, 16.) However, the inspector who wrote the reporter testified at her deposition that she does not actually know whether the smoke detector activated during the fire because she did not speak to the occupants; her report was based on the fact that the smoke detector was not sounding when she arrived on the scene. (Williams Dep. [DE 92-2] 27:11-16; 30:21-31:16.) She also

stated that it would be possible for the smoke detector to be operational even while in the hall closet. (*Id.* at 28:20-29:13.)

On April 24, 2018, Veronica Sears, as Personal Representative of the Estate of K.A., filed a complaint in Florida state court against Privilege, alleging one count of negligence. (DE 1-5.) The state court complaint alleges that Privilege was negligent by failing to: (1) operate the apartment complex in a safe and reasonably prudent manner; (2) maintain the apartment complex in a safe and reasonably prudent manner; (3) warn its tenants and the public about dangerous conditions on the subject premises; (4) provide and maintain fire alarms in compliance with state fire and building codes; (5) provide and maintain smoke detectors in compliance with state fire and building codes; (6) provide and maintain emergency lights in compliance with state fire and building codes; (7) provide and maintain fire sprinklers in compliance with state fire and building codes; (8) inspect fire extinguishers in compliance with state fire and building codes; (9) inspect fire alarms in compliance with state fire and building codes; (10) inspect smoke detectors in compliance with state fire and building codes; (11) inspect emergency lights in compliance with state fire and building codes; (12) fire sprinklers in compliance with state fire and building codes; (13) inspect fire extinguishers in compliance with state fire and building codes; (14) replenish fire extinguishers after any fire on the premises; (15) comply with all applicable fire codes required under Florida law; and (16) comply with all applicable building codes required under Florida law. (DE 1-5, ¶ 19.) Palm is not a named party in the state court action. (DE 1-5.)

On July 20, 2018, GuideOne filed this action naming Palm, Privilege, and Veronica Sears as respondents. (DE 1.) GuideOne subsequently filed an Amended Complaint in which it seeks a declaration that it is entitled to deny coverage for any and all claims resulting from the fire loss. (DE 20.) The parties have now filed cross-motions for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. DISCUSSION

GuideOne seeks summary judgment declaring that there is no coverage for Privilege and Palm under the Policy because Palm and Privilege breached the warranty in the Policy that there

were operable smoke detectors at the Privilege Apartments.[3] GuideOne does not argue the claims in the state court action are not otherwise covered by the language in the Policy; instead, GuideOne argues, as a result of Palm and Privilege's breach of the warranty, GuideOne may deny the claim or rescind the Policy. Palm and Privilege seek summary judgment declaring GuideOne has a duty to defend and indemnify Privilege in the state court action and dismissing Palm from this case. Palm and Privilege argue the warranty provision of the Policy is really an exclusionary clause and, therefore, must be interpreted narrowly.

GuideOne maintains that Palm and Privilege breached the Policy by failing to comply with the terms of the Representations and Warranties Endorsement in which Palm and Privilege represented and warranted that it was true at the inception date of the policy, and would remain true during the Policy period, that "there are operable smoke detectors in each unit." Based on the Fort Lauderdale Fire Rescue report, GuideOne contends that Palm and Privilege breached the Policy permitting GuideOne to deny the claim or even rescind the Policy. Palm and Privilege respond that there is no record evidence that there was no "operable" smoke detector in apartment 26 at the time of the fire. Palm and Privilege make two arguments in support of this conclusion.

First, Palm and Privilege argue that "operable" does not mean being used properly or otherwise "operating;" it means "capable of being put into use, operation or practice." The Policy does not define the term "operable." Thus, Palm and Privilege maintain that the correct definition is the dictionary definition. GuideOne argues that this would lead to the warranty being meaningless. Regardless of how the term "operable" is defined, as discussed below, the record

---

[3] It is not clear why GuideOne makes any arguments regarding Palm or why Palm has been named as a respondent in this case. The record evidence indicates that Palm is not a party to the state court action, has no ownership interest in the Privilege Apartments, and Palm and Privilege are not affiliated in any way.

8

evidence does not support a finding of breach. Therefore, the Court need not determine the proper definition of the term "operable."

Second, Palm and Privilege point out that the Fort Lauderdale Fire Rescue report did not state that the smoke detector was not operable and that the Fire Inspector testified that she does not actually know if the smoke detector activated at the time of the fire because she did not speak with any of the occupants about the smoke detector. The Inspector only knew that the smoke detector was not sounding at the time she entered Apartment 26. She also testified that she did not check the smoke detector to see if there was a battery in it or if it was operational. Further, Ms. Alvarenga, who had a duty under the Smoke Detector Addendum to report any problems to management, never reported that the smoke detector was not working. While she reported the beeping, she was given instructions on how to stop it, and she never reported that the smoke detector was not actually working. Thus, there is no record evidence that that the smoke detector was not operable, or operating, at the time of the fire. Although the smoke detector had been removed from the wall, it had a battery backup that would have allowed it to operate despite being removed from the wall. There is record evidence that a new battery was put in the smoke detector about a month before the fire and no record evidence that the battery stopped working or was removed from the smoke detector. Consequently, GuideOne has not established that Palm and Privilege breached the warranty section of the Policy by having an inoperable smoke detector in Apartment 26. Thus, GuideOne is not entitled to summary judgment.

Palm and Privilege argue that they are entitled to summary judgment because GuideOne is obligated under the terms of the Policy to defend and indemnify Privilege in the state court lawsuit. GuideOne's only challenge to coverage is the warranty issued discussed above. Thus, it does not argue that the Policy would not otherwise cover the claims made in the state court lawsuit.

Consequently, GuideOne has a duty to defend and indemnify its insureds. Accordingly, it is

**ORDERED** that:

1. Petitioner's, GuideOne National Insurance Company, Motion for Summary Judgment [DE 84] is **DENIED.**

2. Palm NMB, LLC and Privilege Apartments, LLC's Motion for Summary Judgment [DE 86] is **GRANTED.**

3. All pending motions are **DENIED as moot.**

4. The Court will enter a separate judgment.

5. This case is **CLOSED.**

**DONE and ORDERED** in Miami, Florida, this 7th day of October, 2019.

_____
**RODNEY SMITH**
**UNITED STATES DISTRICT JUDGE**

cc: All Counsel of Record